**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| THI HAI LE, | ) | |
|     Petitioner, | ) ) ) | |
| v. | ) ) | |
| CHRISTOPHER BULLOCK, in his official capacity as Field Office Director of Enforcement and Removal Operations, New Orleans Field Office, | ) ) ) ) ) | No. 2:26-cv-02352-SHL-cgc |
|     Respondent. | ) ) | |

**ORDER GRANTING PETITION**

On March 30, 2026, pro se Petitioner Thi Hai Le filed the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. (ECF No. 2.) She states that she is a citizen of Vietnam who entered the United States without inspection, crossing the border from Mexico on or about November 11, 2024. (ECF 2-2 at PageID 16.) On December 30, 2025, during a report to the Memphis ICE office, Le was detained by immigration authorities and remains in custody at the West Tennessee Detention Facility. (Id.) She challenges her detention under 8 U.S.C. § 1225 "without bond, without charge, under statutes that do not authorize it." (Id. at PageID 15.) She seeks her immediate release or a prompt bond hearing. (Id. at PageID 24.) Respondent Christopher Bullock responded on April 6.[1] (ECF No. 12.)

For the reasons explained below, Le is entitled to immediate release, and the Petition is **GRANTED**.

---

[1] Respondent also moves for his substitution as the sole Respondent in this matter. See Rosciszewski v. Adducci, 983 F. Supp. 2d 910, 913–14 (E.D. Mich. 2013). That motion is **GRANTED**. Accordingly, Trinity Minter, Scott Ladwig, Pam Bondi, and Kristi Noem are dismissed from the case.

## BACKGROUND

According to Respondent, Le entered the United States on or about November 5, 2024, at Otay Mesa, California. (ECF No. 12 at PageID 50.) She was arrested on the United States side of the border. (Id.) On December 10, 2024, she was released "contingent upon her enrollment and successful participation in an Alternatives to Detention (ATD) program." (Id. at PageID 51.) She was given a notice authorizing parole "for one year beginning from the date on this notice [which] will automatically terminate upon your departure or removal from the United States or at the end of the one-year period unless ICE provides you with an extension at its discretion." (Id.) The notice indicated that she should report in person to a Memphis, Tennessee location on December 17, 2024. (Id.) There is no indication that she has any criminal history.

On December 30, 2025, when Le appeared at the ICE office for a scheduled check-in, immigration authorities arrested her. (ECF No. 2-2 at PageID 16.) She remains at the West Tennessee Detention Facility in Mason, Tennessee. (Id.) The present Petition followed, the crux of which argues that Le was illegally detained without a bond hearing.

Indeed, under recently adopted guidance from DHS and ICE, Le is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and was allegedly declared ineligible to be released on bond. Until recently, however, most noncitizens in this situation were given bond hearings under a different provision, § 1226(a). See Godinez-Lopez v. Ladwig, No. 25-CV-02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025). Section 1226(a) allows immigration authorities to release immigrants from detention on a bond of $1,500 or more, unless they require detention for certain reasons. For example, noncitizens with certain criminal records may not be released on bond. 8 U.S.C. § 1226(c). Section 1225(b)(2)(A), on the other hand, prohibits a bond for all "applicants for admission" who are "seeking admission."

2

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a). Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated."). The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission." And all "applicants for admission" who are "seeking admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status. As a result, all undocumented immigrants awaiting removal are detained without a bond hearing. This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

Le alleges violations of § 1226(a) and Fifth Amendment due process. (ECF No. 2-2 at PageID 20–24.) She seeks her immediate release or, in the alternative "a prompt bond hearing." (Id. at PageID 24.) In response, Respondent contends that Le should be required to exhaust administrative remedies; that § 1225, not § 1226, applies to her because she is an "applicant for admission"; that Le should be treated for due process purposes as if stopped at the border; and that, if the Court finds that § 1226(a) applies to her, she should be granted a bond hearing and not immediately released. (ECF No. 12 at PageID 52–57.)

### ANALYSIS

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'" Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  Le challenges her detention without bond as violative of § 1226(a) and her constitutional rights.  (ECF No. 2-2 at PageID 20–24.)  The Court first considers whether exhaustion should be excused, then interprets § 1225 and § 1226 to determine which applies to Le, and then analyzes the due process claim.

### I.      Exhaustion

If Congress "specifically mandates" exhaustion of administrative remedies, a petitioner must pursue relief through those administrative processes before seeking habeas relief. McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  When Congress is silent on administrative exhaustion, "sound judicial discretion governs."  Id.  Thus, the doctrine of prudential exhaustion holds that, in the absence of a textual exhaustion requirement, courts can use discretion to refuse to hear habeas petitions that challenge bond determinations until a petitioner exhausts available administrative remedies.  McCarthy, 503 U.S. at 144.  The Sixth Circuit has previously applied this doctrine to dismiss petitions for lack of jurisdiction.  See Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at 1–2 (6th Cir. July 16, 2018).  In the context of immigrant detention, some district courts require detained immigrants to exhaust their administrative remedies—by appealing bond decisions to the BIA and receiving adverse decisions—before the courts will review their habeas petitions.  E.g., Villalta v. Greene, No. 25-cv-01594, 2025 U.S. Dist. LEXIS 169688, at *6–7 (N.D. Ohio Aug. 5, 2025).

In some cases, however, exhaustion is excused, and courts review habeas petitioner claims.  Courts have reached these conclusions when (1) "the legal question is fit for resolution

and delay means hardship, or (2) exhaustion would prove futile." Shalala v. Ill. Council on Long Term Care, 529 U.S. 1, 13 (2000) (citation modified).

An issue is fit for judicial resolution when it presents a purely legal question. Contreras-Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (E.D. Mich. Oct. 21, 2025) (citing Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024)). Further, when administrative procedures involve "an indefinite or unreasonable timeline," such delays result in hardship. Id. If there is a risk of extended, "potentially unlawful detention" during such delay, then exhaustion is excused. Id.

As for futility, waiver of exhaustion "is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought." Id. at *9 (quoting Cooper v. Zych, No. 09-CV-11620, 2009 U.S. Dist. LEXIS 75423, at *2 (E.D. Mich. Aug. 25, 2009)).

Le argues that exhaustion should be excused here because 28 U.S.C. § 2241 lacks an exhaustion rule, the issues are legal in nature, and exhaustion would be futile. (ECF No. 2-2 at PageID 18–20.)

Respondent argues that the Court should dismiss the Petition based on prudential exhaustion, as Le has not appealed to the BIA and received an adverse decision. (ECF No. 12 at PageID 52.) He recognizes that Congress has not imposed an administrative exhaustion requirement, and that "sound judicial discretion governs" the Court's decision. (Id. (quoting McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). But he relies on the exhaustion arguments made in previous briefing, including Monge-Nunez v. Ladwig, No. 25-cv-03043-TLP-atc, 2025 WL 3565348 (W.D. Tenn. Dec. 12, 2025). (Id.)

5

Neither 8 U.S.C. §§ 1225 nor 1226 contain a textual exhaustion requirement for immigrants in ICE custody. Similarly, 28 U.S.C. § 2241 lacks an exhaustion requirement. And the Sixth Circuit has not yet spoken on the issue of prudential exhaustion in these recent cases. See Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 13 at PageID 101 (W.D. Tenn. Dec. 30, 2025). Therefore, exhaustion may only be required here based on "sound judicial discretion." McCarthy, 503 U.S. at 144. But, exhaustion may be excused if "the legal question is fit for resolution and delay means hardship, or exhaustion would prove futile." Shalala, 529 U.S. at 13.

Le's failure to exhaust is excused. First, the question she poses in the Petition is fit for resolution and undue delay would impose hardship on her. The Parties do not dispute any material facts. (See ECF Nos. 2-2 at PageID 16; 12 at PageID 50–51.) Thus, deciding which statute applies to Le's detention is a purely legal question, "which is right in a federal court's wheelhouse." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8. Further, if Le is required to pursue an appeal with the BIA, her appeal process would likely take six months or more. See id. (citing Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 U.S. Dist. LEXIS 175767, at *9 (E.D. Mich. Sep. 9, 2025)). Bond hearings were designed to prevent prolonged detention during removal proceedings, which are often lengthy. Reyes, 2025 U.S. Dist. LEXIS 175767, at *9 (citations omitted). Therefore, denying Le the chance to have a bond hearing merely because she did not appeal to the BIA may force her "to endure six months or more of potentially unlawful detention and thus would cause [her] great hardship." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.

Furthermore, the futility of exhaustion is an independent reason to excuse exhaustion here. The BIA stated in Yajure Hurtado that § 1225(b)(2)(A) applies to detained illegal

6

immigrants who "have been residing in the United States for years."  29 I. & N. Dec. at 220–21.

Thus, any appeal would be futile, and exhaustion is excused.

**II.      Statutory Interpretation**

"A statute should be construed so that effect is given to all its provisions, so that no part

will be inoperative or superfluous, void[,] or insignificant."  Corley v. United States, 556 U.S.

303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)).  Each word within a statute

must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that

'statutory language has meaning only in context.'"  Kentucky v. Biden, 23 F.4th 585, 603 (6th

Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207,

(1997)).

Custody over noncitizens during removal proceedings is generally governed by two

statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of

inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and

detention of aliens").  Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)      Inspection of applicants for admission
>                 . . .
> (2)      Inspection of other aliens
>     (A)      In general
>              Subject to subparagraphs (B) and (C), in the case of an alien
>              who is an applicant for admission, if the examining
>              immigration officer determines that an alien seeking
>              admission is not clearly and beyond a doubt entitled to be
>              admitted, the alien shall be detained for a proceeding under
>              section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  An "applicant for admission" is a noncitizen

"present in the United States who has not been admitted."  8 U.S.C. § 1225(a)(1).  Under this

section, all applicants for admission "shall be detained."  Id. § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in relevant part:

> (a)　Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien <u>may</u> be <u>arrested</u> <u>and</u> <u>detained</u> pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1)　<u>may</u> <u>continue</u> <u>to</u> <u>detain</u> the arrested alien; and
> (2)　<u>may</u> <u>release</u> the alien on—
> 　(A)　bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General .
> 　. . .

8 U.S.C. § 1226(a) (emphasis added).  The exception in § 1226(c) prohibits releasing on bond a noncitizen found to be inadmissible, who <u>also</u>,

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

<u>Id.</u> § 1226(c)(1)(E)(ii).  "Noncitizens arrested and detained under § 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an IJ."  <u>Lopez-Campos</u>, 2025 WL 2496379, at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified).  "The IJ evaluates whether there is a risk of nonappearance or danger to the community."  <u>Id.</u> (citing <u>Guerra</u>, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  Thus, except for those noncitizens with a record of certain criminal offenses, § 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue.[2]

---

[2] <u>See</u> 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . .  After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . .  [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

8

Le argues that ICE's new interpretation of § 1225(b)(2)(A) violates 8 U.S.C. § 1226(a) and her rights under the Fifth Amendment.  (ECF No. 2-2 at PageID 20–24.)  She argues that § 1226(a) applies to her because, "at the time of her detention, she was not presenting herself for admission at or near the border, nor was she applying for any kind of immigration relief that could possibly render her a noncitizen 'seeking admission.'"  (Id. at PageID 22.)  "Moreover, Ms. Le never received a determination by an immigration officer (immigration judges are employees of the DOJ) that she was 'not clearly and beyond a doubt entitled to be admitted.'"  (Id.)  Finally, she points out that she "is not subject to an Expedited Removal because she passed a credible fears interview."  (Id.)

Respondent argues that § 1225(b)(2)(A), not § 1226(a), applies to Le because she is still "an 'applicant for admission' who is treated, for constitutional purposes, as if stopped at the border."  (ECF No. 12 at PageID 53.)  As a result, he asserts that "she is subject to mandatory detention and not entitled to a bond hearing."  (Id.)  He offers several cases from within this district, as well as opinions from the Fifth and Eighth Circuits as persuasive authority.  (Id. at PageID 53–55.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondent's contention that Le is an "applicant for admission."  Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  The title of § 1226(a) is "Apprehension and detention of aliens."  Although titles of statutes are not controlling, they are "tools available for the resolution of a doubt about the meaning of a statute."  Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified).  Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal" proceedings.  But Le was not "arriving" when she was detained far away from the United States

9

border.  (ECF No. 2-2 at PageID 16.)  Also, she is not eligible for expedited removal proceedings.  Thus, the mandatory detention provision of § 1225 does not apply to her.

Further, the subject matter of § 1225 undercuts Respondent's reading of the statute. Section 1225 describes the process of inspecting and removing immigrants actively crossing the border.  See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible.").  And Respondent's reading of § 1225(b)(2)(A) ignores several words and phrases within the statute itself.  "If possible, every word and every provision is to be given effect."  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012).  But to apply § 1225(b)(2)(A) to Le would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  The record does not show that Le was seeking admission at the time of her detention, nor does it show that she had received a determination by an immigration officer that she was "not clearly and beyond a doubt entitled to be admitted." The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for over a year.  To interpret "applicant for admission" using its ordinary meaning but outside the context of the provision, as argued by Respondent, is untenable.

Also, Respondent's interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous.  That subsection carves out an exception to the general rule that an arrested noncitizen is eligible for a bond.  Under subsection (c), a noncitizen with a certain criminal

10

history must be mandatorily detained.  8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .").  But, under Respondent's reading of § 1225, all arrested noncitizens must be detained without bond.  Thus, § 1226(c) would have no purpose.  Yet, courts must "give effect, if possible, to every clause and word of a statute."  Duncan v. Walker, 533 U.S. 167, 174 (2001).  Le's reading of the statute is the only one compatible with the presence of § 1226(c).  What is more, Le appears to have no criminal record in the United States, so this mandatory detention provision cannot conceivably be applied to her.  See § 1226(c)(1)(E)(ii).

The plain language of § 1226(a) describes Le's situation.  That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Le was charged with being removable and detained in West Tennessee.  Thus, the Attorney General has discretion under this section.  She "may continue to detain [her]" or she "may release [her] on bond."  (Id.)  But the Attorney General may not deny her the bond hearing to which she is entitled.  See 8 C.F.R. § 1236.1(c)(8), (d)(1).

Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in Le's favor, but the Congressional intent behind § 1226(a) is also supportive.  In 2025, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude persons with criminal histories from receiving bond.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  Congress would not have

11

added exceptions to the broad rule of § 1226(a) if, as Respondent asserts, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases.  See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally.  In fact, it proves the opposite.").  On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025.  After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless."  Lopez-Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025)).

Thus, given the plain language of §§ 1225 and 1226, the arrest and detention of an illegal immigrant who was arrested far from the border after being continuously present in the United States for over a year is governed by § 1226(a), and is subject to the discretionary bond process in that provision.

### III.    Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)."  Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)).  In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen.  See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020).  Those factors include (1) "the private interest that will be affected by the official

12

action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335.

Le argues that Respondent violated the Due Process Clause of the Fifth Amendment by detaining her without a bond hearing.  (ECF No. 2-2 at PageID 22–24.)  Respondent, however, asserts that Le's due process rights were not violated because, without a lawful entry, she should be "'treated' for due process purposes 'as if stopped at the border.'"  (ECF No. 12 at PageID 55 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)).)

Here, because § 1226(a) applies to Le, she is owed the process given to her under that statute.  As for the Mathews factors, (1) Le has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates her risk of flight and danger to the community, and, (3) given Le's clean criminal record, it will be difficult for the Government to demonstrate an interest in her detention.

As a result, her detention without bond violated her liberty interest, which cannot be casually tossed aside.  Thus, Le is entitled to immediate release.  See Villafranca Lara v. Ladwig, No. 26-CV-02079-SHL-tmp, 2026 WL 401204, at *10 (W.D. Tenn. Feb. 12, 2026) ("Because ICE purported to detain [petitioner] under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a).").  Accordingly, her detention under the mandatory detention framework of § 1225(b)(2)(A) violates her due process rights.  Thus, consistent with the Court's decision in Godinez-Lopez, and after consideration of the record, Le's petition is **GRANTED**.

## CONCLUSION

For the reasons stated above, the Petition is **GRANTED**.  Respondent is ordered to release Le immediately.  Respondent is **ENJOINED** from pursuing Le's detention under 8 U.S.C. § 1225(b)(2)(A).  Respondent is further **ORDERED** to file a Status Report with this Court on or before April 22, 2026, to certify compliance with this Order.

**IT IS SO ORDERED,** this 17th day of April, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

14